1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11   KENNETH OLIVER,                    )   Case No.: 1:14-cv-00088-LJO-SAB (PC)
                                         )
12              Plaintiff,               )
                                         )   **FINDINGS AND RECOMMENDATIONS**
13        v.                             )   **REGARDING DEFENDANT GRANNIS'S**
                                         )   **MOTION TO DISMISS**
14   DARRYL ADAMS, et al.,               )
                                         )   [ECF No. 57]
15              Defendants.              )
                                         )
16   _____ )

17        Plaintiff Kenneth Oliver is appearing pro se and in forma pauperis in this civil rights action

18   pursuant to 42 U.S.C. § 1983.  Plaintiff declined United States Magistrate Judge jurisdiction;

19   therefore, this action was referred to the undersigned pursuant to 28 U.S.C. § 636(c).[1]  Defendants

20   have not consented or declined United States Magistrate Judge jurisdiction.

21        Currently before the Court is Defendant Grannis's motion to dismiss the first amended

22   complaint, filed December 27, 2016.

23                                    **I**

24                    **PROCEDURAL BACKGROUND**

25        This action is proceeding against Plaintiff's claim under the Religious Land Use and

26   Institutionalized Persons Act against Defendants Cates, Adams, Davis, Fields, Smith, El-Amin,

27   _____

28   [1] Plaintiff declined United States Magistrate Judge jurisdiction on February 28, 2014.  (ECF No. 7.)

                                       1

Grannis, Kostecky, and Does Four through Six; Plaintiff's claim under the First Amendment for violation of the Free Exercise of religion against Defendants Cate, Adams, Davis, Field, Smith, El-Amin, Grannis, Kostecky, and Does Four through Six; Plaintiff's claim under the First Amendment for violation of the Establishment Clause against Defendants Cate, Adams, Davis, Field, Smith, El-Amin, Grannis, Kostecky, Van Klaverer, and Does Four through Six; and Plaintiff's claim for violation of the Equal Protection Clause against Defendants Cates, Adams, Davis, Field, Smith, Van Klaverer, El-Amin, Grannis, Kostecky, and Does Four through Six.

On March 14, 2016, Defendants D. Adams, A. El-Amin, M. Cate, F. Field, R. Davis, B. Van Klaverer, and J. Smith filed a motion to dismiss certain portions of the complaint.  (ECF No. 37.)  On this same date, Defendants also filed a request for judicial notice.  (ECF No. 38.)

On May 19, 2016, Defendant K. Kostecky joined in the motion to dismiss.[2]  (ECF No. 47.)

After receiving two extensions of time, Plaintiff filed an opposition on June 29, 2016.  (ECF No. 48.)  On this same date, Plaintiff submitted a third amended complaint which was lodged by the Court.  (ECF No. 49.)  On July 18, 2016, Plaintiff filed a motion for leave to file a third amended complaint.  (ECF No. 50.)

Defendants filed a reply to Plaintiff's opposition on July 21, 2016.   (ECF No. 51.)

On August 8, 2016, Defendants filed an opposition to Plaintiff's motion for leave to file a third amended complaint.  (ECF No. 52.)

On December 22, 2016, the undersigned issued Findings and Recommendations to grant in part and deny in part Defendants' motion to dismiss.

On December 27, 2016, Defendant Grannis filed a motion for an extension of time nunc pro tunc to file a responsive pleading, and simultaneously filed the same motion to dismiss previously filed by the other Defendants.  (ECF Nos. 56, 57.)

On February 3, 2017, the Court granted Defendant Grannis's motion for extension of time nunc pro tunc.  (ECF No. 60.)

---

[2] Defendant N. Grannis waived service on October 5, 2016, but did not join in the motion to dismiss or otherwise file a response to the complaint.  (ECF No. 53.)

On this same date, the Findings and Recommendations were adopted in full by the assigned District Judge.  (ECF No. 61.)

The Court notes that although Plaintiff did not file an opposition to Defendant Grannis's motion to dismiss, given the procedural posture of this case and in the interest of justice, the Court will consider Plaintiff's opposition and Defendants' reply filed to the previous motion to dismiss on June 29, 2016, as equally applied to the instant motion.  (ECF No. 48.)

## II.

## DISCUSSION

### A.      Motion to Dismiss Standard

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citations omitted).  In resolving a 12(b)(6) motion, a court's review is generally limited to the operative pleading.  Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (quotation marks omitted); Conservation Force, 646 F.3d at 1242; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The Court must accept the factual allegations as true and draw all reasonable inferences in favor of the non-moving party, Daniels-Hall, 629 F.3d at 998; Sanders, 504 F.3d at 910; Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000), and in this Circuit, pro se litigants are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

///

///

3

B.      Request for Judicial Notice

Defendant requests that the Court take judicial notice of the following documents: (1) Plaintiff's Transfer Endorsement, dated February 23, 2016, an electronically generated document CDCR SOMA ICCT164, showing approved transfer from California State Prison—Corcoran to the Correctional Training Facility in Soledad, California (Ex. A); (2) results of a California Department of Corrections and Rehabilitation (CDCR) "Inmate Locator" search, showing that Plaintiff inmate Kenneth Gale Oliver, CDCR # K54606, is currently housed at the Correctional Training Facility in Soledad, California (Ex. B); (3) Plaintiff's Abstract of Judgment and Amended Abstract of Judgment showing his commitment offense and term of incarceration (Ex. C); and (4) a press release from CDCR dated April 15, 2008, and a news article from the Sacramento Bee dated October 26, 2012, regarding Defendant M. Cate (Ex. D).  (ECF No. 58.)

Although the Court's review on a motion to dismiss is generally limited to the allegations in the complaint, the Court may properly take judicial notice of matters of public record pursuant to Federal Rule of Civil Procedure 201.  Rule 201 of the Federal Rules of Evidence permits a court to take judicial notice of any facts which may be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b) and (d).  Judicial notice is appropriate where the fact is not subject to reasonable dispute because it is "capable of accurate and ready determination by resort to resources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).  The Court may take judicial notice of matters of public record, including records and reports of administrative agencies.  United States v. 14.02 Acres of Land More or Less in Fresno County, 547 F.3d 943, 955 (9th Cir. 2008) (quotations marks and citations omitted).  A Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

The Court grants Defendant's request to take judicial of the above identified documentation as documents in the public record not reasonably subject to dispute, because their accuracy can readily be determined from sources whose accuracy cannot reasonably be questioned.  (Req. for Judicial Notice (RJN), Exs. A-D, ECF No. 58.)

4

C.      **Complaint Allegations**[3]

Plaintiff is a faithful adherent to the African based spiritual practice commonly referred to as "Shetaut Neter."   Plaintiff has practiced Shetaut Neter since 2000.  Shetaut Neter is an African derived spiritual system with roots that extend back to dynastic Egypt and has numerous followers around the world.  The central aims and tenets enjoined in the Shetaut Neter practice involve men and woman seeking oneness with God in an effort to attain God-like consciousness through a life of virtue and cultivation of the spirit.  This practice relies heavily on the study of scientific knowledge, meditation, and daily prayer practice, body discipline and maintaining an ascetic diet.

As a practitioner of Shetaut Neter, Plaintiff is required to study the various texts and scriptures related to its practice, worship through prayer and meditation using a prayer rug at least three times daily, maintain a specific and stringent vegetarian diet (commonly referred to as the "Kemetic Diet"), participate in group study, worship and service, and honor through recognition and practice specific religious holiday observances.

The Kemetic Diet is a central tenet and component to the practice of Shetaut Neter and prohibits the consumption of any meat or animal derived product, including dairy and egg products; wheat or products containing refined sugar or any genetically modified foods.  In short, Plaintiff is required to maintain a diet that consists of 80% raw foods such as nuts, seeds, fruits and vegetables, and approximately 20% cooked foods such as legumes, tofu, soy, and other vegetarian sources of proteins, calories and vitamins.

On February 26, 2009, Plaintiff was transferred from the California Men's Colony in San Luis Obispo to Corcoran State Prison, Security Housing Unit (SHU).  Shortly after Plaintiff's arrival at Corcoran, he submitted a "request for interview" form to the Corcoran Chapel for religious services requesting an accommodation for his religious based dietary needs and for information regarding authorization on how he could obtain his personal prayer rug from his property and other materials related to his spiritual practice.  Plaintiff received no response.

---

[3] This action is proceeding on Plaintiff's second amended complaint, filed March 12, 2015.  (ECF No. 24.)

In May of 2009, approximately 45 days after Plaintiff initially submitted the request for interview, Plaintiff submitted a second request to the Chapel in an effort to obtain approval for religious accommodations mentioned above.  Plaintiff received no response.

After Defendants failed to respond to Plaintiff's second written request, Plaintiff filed an administrative appeal regarding Defendants refusal to provide him with reasonable opportunity to exercise his religious practice when there was no meaningful or legitimate penological interest in doing so.

On July 29, 2009, Defendant A. El-Amin, interviewed Plaintiff in regard to his grievance and request for religious accommodation.  Defendant El-Amin informed Plaintiff that he would accommodate Plaintiff's request to be provided religious study materials and scriptural texts related to the practice of Shetaut Neter and that the Chapel would order the materials during its next purchase order.  In regard to Plaintiff's other religious request, El-Amin informed Plaintiff that he would look into accommodating Plaintiff's requests with the "head chaplains."

On August 4, 2009, Defendants El-Amin and Field forwarded Plaintiff a memorandum that stated his administrative appeal was being "partially granted."  Specifically, the memorandum stated that Plaintiff's request for religious books and materials would be accommodated and expedited as soon as possible.  Plaintiff's request for access to a Shetaut Neter priest or access via service on DVD or the institutional television channels was denied.  Defendants informed Plaintiff that religious television programming was the responsibility of the "educational heads," and his diet requirements had to be coordinated through the institution food services.  Defendants denied all other accommodation requests made by Plaintiff.

Plaintiff appealed Defendant El-Amin and Fields denial of his request for religious accommodations to the Warden of Corcoran, Defendant D Adams.  Defendant R. Davis addressed Plaintiff's appeal on behalf of Derral Adams.  Davis informed Plaintiff that he would not be allowed any type of group service because he is housed in the SHU and Plaintiff could worship individually within his cell.  Davis denied Plaintiff's religious diet request, as well as all other requests for reasonable accommodations.

1   Defendants N. Grannis and K. Kostecky, on behalf of Defendant Cate, denied all of Plaintiff's

2   requests for reasonable religious accommodations, stating in essence that Plaintiff could put his

3   blanket on the floor and worship/pray in his cell.

4   Between October 2009 through June 2010, Plaintiff submitted multiple requests to Defendants

5   El-Amin, M. Smith, and Van Klaverer, seeking confirmation of the religious scriptural texts, which

6   were never received.

7   Sometime between 2010 through 2011, Corcoran officials began broadcasting at least five

8   separate Christian channels through its institutional closed-circuit television system.  These channels

9   broadcast Christian programming 24 hours a day, seven days a week, in both English and Spanish.

10   These channels dedicated exclusively to Christian content were the sole religious programming

11   broadcast through Corcoran's institutional television system.

12   Upon information and belief the institutionally broadcast religious programming was

13   facilitated by Defendants Van Klaverer, Smith, Adams, Davis, El-Amin, Field, Carron, and/or any of

14   several Doe Defendants.  These Defendants are directly responsible for the prison's religious and

15   institutional television programming decisions.

16   CDCR has promulgated rules and regulations that set forth its policies regarding religious

17   programming for prisoners under its charge.  Defendant Cate was responsible for the administration

18   and implementation of CDCR's policies, practices, and procedures.  Consequently, he had both the

19   authority and responsibility to ensure that CDCR's religious programming policies were all inclusive

20   and flexible enough to comply with and not choke the constitutional rights of all prisoners.

21   Defendants Does Four and Five were responsible for all programming and policy formulation

22   within CDCR's adult institutions and to ensure consistently and uniformity in their development and

23   application.  Moreover, these Defendants had managerial responsibility for the Office of Community

24   Resources, who is responsible for providing policy and training to institutional staff regarding

25   religious programming.

26   Defendant Doe Six was responsible for all aspects of policy and programming formulation for

27   CDCR's Division of Support Services, which includes the Department's religious programming.  This

28

1  Defendant has complete line authority over the approval or disapproval of religious programming

2  policy and reports directly to the Secretary of CDCR.

3        Defendant Doe Seven was charged with providing policy, supervision and training to the

4  institution's staff who would be directly responsible for providing religious accommodations to

5  prisoners.

6        Defendants Cate and Does Four through Six have created, adopted, or enforced a religious

7  service policy that provides for a Jewish Chaplain or Rabbi to have absolute autonomy and decision

8  making authority over determining: (a) whether or not a prisoner is or isn't "Jewish" in accord with a

9  subjective and bias criteria determined by the Jewish chaplain; and (b) who can and cannot participate

10  in the Jewish Kosher Diet program.  This policy does not take into account the actual religious faith of

11  the prisoner applying, but rather is being determined based on proof of a so-called Jewish ethnicity.

12  For example, a prisoner applicant who can show that his mother or father is "Jewish" would be

13  approved for receipt of a religious based Kosher diet.  On the other hand, a prisoner who had studied

14  and adopted the Jewish faith, but who wasn't considered by the Jewish Chaplain to be a so-called

15  "real" Jew by birth would be disapproved to participate in the program.

16        These Defendants created, adopted, or enforced this policy while not making the same or

17  similar requirements on other religious diet programs or its prisoner participants.  No other faith-based

18  Chaplain has been given the autonomy and final decision making authority to determine the faith and

19  beliefs of a prisoner or the necessity of a particular religious diet relevant to his religious practice.

20        In addition, these Defendants created, adopted, or enforced a policy that advanced only two

21  real religious diets, Jewish and Islamic, while failing to promulgate a policy that allowed dietary

22  opportunities to prisoners who subscribe to other denominations or faiths.

23        This policy also advanced preferential treatment to those "approved" Jewish diet prisoners and

24  discriminated against those of other faiths, by allowing any prisoner, Muslim or non-Muslim to

25  receive an Islamic Halal diet, while at the same time not allowing "non-Jewish" prisoners to receive a

26  Jewish Kosher diet.

27        Defendants Cate and Does Four through Six were responsible for the supervision, oversight,

28  training and compliance of CDCR's Community Resource Unit (CRU).  The CRU administers,

interprets, and formulates religious policy and procedures; reviews chaplain selections prior to appointment; and advises on the conduct of religious programs and in-service training for chaplains.

Defendants Cate and Does Four through Six have created, adopted, or enforced a policy that requires each institution to have a Religious Review Committee. This committee must be comprised of designated chaplains, and a correctional captain or their designee.

This policy mandates that a Religious Review Committee shall not deny accommodations for religious services unless the denial is for reasons which would impact facility safety and security and orderly day to day operation of the institution.

This provision of the policy is actually illusory and empty because Defendants Cate and Does Four through Six have promulgated and enforced a policy that confines any so-called Religious Review Committee's authority or discretion to approve a prisoner's request for religious service beyond that which Defendants have already approved and advanced.

Defendant Cate and Does Four and Six have approved and advanced the Jewish Kosher diet and the Muslim Halal diet while failing to provide regulations that allow for the dietary provisions for prisoners of alternative faiths.

This same regulatory restriction infects the type of spiritual advisors or chaplains CDCR dictates can be paid to enter the prisoner to administer service. Defendants have formulated and enforced a policy that prefers Western World religions while marginalizing and relegating alternative faiths to second class status. This preference manifests itself in the policy itself, which allows only paid spiritual advisor or chaplain positions for Islam, Judaism, Christianity, and Native American.

Apart from the statewide mandates regarding particular religious services for particular denominations, CDCR has charged each institutional Warden with the responsibility for the religious programming in their respective prisons. Chief Deputy Wardens or Associate Wardens are charged with the supervision of the staff chaplains.

Defendant Adams formulated and enforced Corcoran's "Operational Procedure" No. 804 "Religious Program." This procedure set forth the policy directives for the accommodation of religious services. Defendants El-Amin, Carron, and Does One through Three, under the supervision of Defendant Smith, were responsible for the implementation of this procedure.

9

1   Upon information and believe, neither CDCR or Corcoran has ever authorized an Institutions

2   Food Services Division to approve or deny religious diet accommodation requests.  Nor is Plaintiff

3   aware of any policy instructing prisoners to pursue such channels.

4   Plaintiff is aware, through observation and knowledge, that Defendants Smith and El-Amin

5   regularly approve requests made by prisoners to receive a so-called vegetarian or Halal religious diet,

6   whether or not the request is based on a religious practice or faith.

7   Plaintiff is aware through observation and knowledge that Defendant Carron routinely denied

8   prisoner's religious accommodation requests for a Jewish Kosher diet unless a prisoner could "prove"

9   he was born Jewish or that he had been converted by a sanctioned Temple or Rabbi in free society,

10   whether or not the request was based on the actual practice of Judaism.

11   Plaintiff is aware through observation and knowledge that Defendants El-Amin, Carron, and

12   Does One through Three have routinely approved requests by prisoners to possess prayer rugs for

13   religious worship.  These prisoners belonged to one of Corcoran's "approved" faith groups.

14   Both CDCR and Corcoran have codified policies and allocated funds to fulfill the purchase of

15   religious books, materials, video and audiotapes, and other religious items for the purpose of religious

16   programing and accommodation.  Upon information and belief, Defendants have allocated and used

17   these funds primarily on the five "approved" denominations, and have failed or refused to provide

18   funding for books, materials and other religious items for prisoners who practice alternative faiths.

19   Upon information and belief Defendants Smith, El-Amin, Adams, Fields, Carron and Does

20   One through Three were responsible for the budgeting, procurement, and allocation of religious books,

21   audio and video tapes and other religious materials for prisoners at Corcoran.

22   Defendants Adams, Davis, Fields, Smith, El-Amin, Carron, and Does One through Three, have

23   ordered, procured, allocated and approved the purchase of religious materials for the five "approved"

24   faiths mentioned herein.

25   Plaintiff is aware that sometime between 2010 and 2011, Defendants arranged and approved

26   provisions for the installation of at least five separate Christian based broadcasting channels to be

27   broadcast through Corcoran's institutional television system.  These channels broadcast Christian

28

religious services 24 hours a day, seven days a week, and were the only religious themed

programming piped through the institution's television system.

Prior to installation of the Christian broadcasting channels, Defendants denied Plaintiff's

request for Shetaut Neter religious services to be broadcast on Corcoran's institutional television

system.

Plaintiff contends he was forced to pray and worship on a concrete floor without the

cleanliness or devotional reverence provided by one's prayer rug.

**D.     Defendants' Motion to Dismiss**

Defendant moves to dismiss portions of Plaintiff's action on the ground that (1) all claims for

declaratory and injunctive relief are moot; (2) any claims for monetary damages against Defendant in

his official capacity are barred by the Eleventh Amendment;  (3) any claim for damages against

Defendant in his individual capacities under the Religious Land Use and Institutionalized Persons Act

(RLUIPA) for damages is barred as a matter of law; and (4) certain claims are barred by the statute of

limitations.

**1.     Dismissal of Injunctive and Declaratory Claims Under Rule 12(b)(1)**

Defendant argues that the Court should dismiss Plaintiff's suit for injunctive and declaratory

relief, which alleges that prison officials failed to provide him with various religious accommodations

while he was at his former prison, Corcoran, because he is no longer housed at that institution.

A case becomes moot if the "issues presented are no longer 'live' or the parties lack a legally

cognizable interest in the outcome."  Murphy v. Hunt, 455 U.S. 478, 481 (1982).  The Supreme Court

has held that an actual controversy must exist at all stages of review, not merely at the time the

complaint is filed.  Preiser v. Newkirk, 422 U.S. 395, 401 (1975).

In his prayer for relief, Plaintiff seeks declaratory relief finding that his constitutional rights

were violated, and that Defendants be enjoined "from subjecting Plaintiff to the unconstitutional and

unlawful acts omission, deprivations, policies, and conditions described[.]"  (Compl. at p. 56, ECF No.

1    24.)[4]  Defendant submits evidence that Plaintiff is no longer housed at Corcoran, and his claims for

2    relief are therefore moot.  An inmate's transfer to another prison while his claims are pending

3    generally will moot any claims for injunctive relief relating to the conditions at that particular facility.

4    See Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995) (citing Preiser, 422 U.S. at 402-03 and

5    Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991)).

6          Plaintiff argues that his declaratory and injunctive relief claims are not moot because they

7    involve issues that are likely to reoccur, his transfer has not eradicated the effects of the alleged

8    violations and harm that persists at his current location, and the harm emanates from system-wide

9    policies.  (Opp'n at p. 5, ECF No. 48.)

10          When a prisoner is seeking injunctive or declaratory relief against prison officials, the Court's

11   inquiry into causation is "broader and more generalized" than when considering the more refined

12   causal connection required in an individual damages claim.  See Leer v. Murphy, 844 F.2d 628, 633-

13   34 (9th Cir. 1988) (citation omitted).  The Court finds that Plaintiff's claims for declaratory and

14   injunctive relief are not moot.  Plaintiff's allegations, or at least a portion of his allegations, are based

15   on CDCR policies regarding religious practices which have impeded Plaintiff's ability to practice his

16   religion. Thus, Plaintiff may sue for injunctive relief to the extent he claims systemic discrimination

17   against Shetaut Neter throughout the CDCR.  Rupe v. Cate, 688 F.Supp.2d 1035, 1043 (E.D. Cal.

18   2010); see also Hartmann v. Cal. Dep't of Corr., 707 F.3d 1114, 1127 (9th Cir. 2013) ("a plaintiff need

19   only identify the law or policy challenged as a constitutional violation and name the official within the

20   entity who can appropriately respond to injunctive relief.") (citing L.A. Cnty v. Humphries, 562 U.S.

21   29 (2010); Hafer v. Melo, 502 U.S. 21, 25 (1991).)  Indeed, Plaintiff is proceeding on his religious

22   claims against Defendant Cate, former Secretary of CDCR.  The fact that Cate is no longer the

23   Secretary of CDCR, does not render Plaintiff's official capacity claims against him moot.  See Fed. R.

24   Civ. P. 25(d) (the Court is authorized to substitute as a defendant Mr. Cate's successor Secretary of

25   CDCR, or other appropriate official.)  As such, Plaintiff's requests for declaratory and injunctive relief

26   are not moot in that respect, and Defendant's motion to dismiss these prayers for relief should be

27

28   _____
     [4] The pages numbers cited herein refer to the page numbers appearing in the header of documents filed in the Court's electronic filing program (ECF).

denied.  See Nelson v. Heiss, 271 F.3d 891, 897 (9th Cir. 2001).  However, because Plaintiff is no longer housed at Corcoran State Prison, and he has failed to demonstrate a reasonably likelihood that he will be transferred back to the Corcoran, his claims for declaratory and injunctive relief specific to Corcoran State Prison should be dismissed.

       2.     Monetary Claims Against Defendant in Official Capacity

In the operative complaint, Plaintiff seeks monetary damages against Defendants, who are sued in both their individual and official capacities.  (Compl. at pp. 13, 56, ECF No. 24.)

The Eleventh Amendment prohibits suits for monetary damages against a State, its agencies, and state officials acting in their official capacities.  Aholelei v. Dep't of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007).  Thus, as Plaintiff concedes, he may not bring a suit for monetary damages against Defendant in his official capacities, and Defendant's motion to dismiss all claims for monetary damages against them in their official capacities should be granted.

       3.     Claim for Monetary Damages Under RLUIPA

Defendant argues that Plaintiff's claim for monetary damages under RLUIPA is barred as a matter of law.  Plaintiff concedes that monetary damages are not available against individual defendants under RLUIPA's Spending Clause jurisdiction.  (Opp'n at p. 10, ECF No. 48; see Wood v. Yordy, 753 F.3d 899 (9th Cir. 2014).  However, Plaintiff argues that his claim against Defendant is brought under RLUIPA's Commerce Clause which entitles him to monetary damages, citing Cotton v. Cate, 578 Fed. Appx. 712, 714 (9th Cir. 2014).  The Court does not find Plaintiff's argument persuasive given the limited law on the issue.

In Woods, the Ninth Circuit addressed only the Spending Clause implications under RLUIPA and explained "pursuant to its spending powers, Congress may place conditions on the disbursement of federal funds[,] … [and] states agree to adhere to any attached conditions.  These conditions, however, must be clearly stated.  Otherwise, states cannot be said to have knowingly accepted them."  Woods, 753 F.3d at 903 (citations omitted).  In addition, "there is nothing in the language or structure of RLUIPA to suggest that Congress contemplated liability of government employees in an individual capacity."  Id. at 904.  Accordingly, RLUIPA "does not authorize suits against a person in anything

1  other than an official or governmental capacity, for it is only in that capacity that funds are received."

2  Id.

3         Subsequent to the decision in Wood, the Ninth Circuit noted in an unpublished decision that it

4  remained an open question whether damages might be available if RLUIPA were invoked under the

5  Commerce Clause versus the Spending Clause.  See Cotton v. Cate, 578 Fed. Appx 712, 714 (9th Cir.

6  2014).  In a later unpublished decision by the Ninth Circuit, the Court did not mention the possible

7  distinction between the two clauses and cited Wood to find that RLUIPA does not allow damages

8  against defendants in their individual capacities.  See Hypolite v. California Dept. of Corr., 585

9  Fed.Appx. 628 (9th Cir. 2014).

10         In a published decision issued by the Sixth Circuit Court of Appeals after Cotton, it was

11  determined that damages claims are barred under RLUIPA's Commerce Clause provision.  Haight v.

12  Thompson, 763 F.3d 554 (6th Cir. 2014).  There, the Sixth Circuit Court stated:

13         [W]hen Congress invokes more than once source of federal power to enact a law, it does so as
       a form of insurance—on the off chance that the first source of authority exceeds its grasp.  It
14     does not invoke two sources of authority in order to permit two interpretations of the same
       phrase.  Otherwise, the general presumption that language in a statute means the same thing in
15     all setting would be an exception, not a rule.  See Clark v. Martinez, 543 U.S. 371, 380 (2005).
       Where possible, and it is eminently possible here, courts avoid treating statutes like
16     chameleons that turn green in some settings but not others.

17

18         Id. at 569.  The Court also determined that a Commerce Clause analysis has a "clear statement"

19  rule similar to that for the Spending Clause analysis that RLUIPA did not satisfy.  Id.  Whether

20  enacted under the Spending Clause or the Commerce Clause, a statute must make "unmistakably

21  clear" that the requested relief is available.  Id. at 568-70.  However, RLUIPA does not unequivocally

22  authorize damages claims against individual defendants, instead stating that a plaintiff may obtain

23  "appropriate relief" against a "government," which is not so broadly defined as to include monetary

24  damages against individual state employees.  Id.; see also 42 U.S.C. § 2000cc-2(a).

25         Given the absence of authority from the Ninth Circuit and the Sixth Circuit's published

26  decision in Haight, the Court finds that Plaintiff's claim for monetary damages whether brought under

27  the Spending Clause or Commerce Clause of RLUIPA to be barred as a matter of law.  See also Gray

28

v. Lewis, No 13-cv-04929-SI, 2015 WL 3957865 (N.D. Cal.) (adopting reasoning of Haight and finding no cognizable claim for monetary damages under RLUIPA's Commerce Clause).

    4.    <u>Statute of Limitations Bar as to Claims in January 2010</u>

Defendant argues that Plaintiff's claims that accrued in January 2010 are time-barred and should be dismissed with prejudice.

Federal law determines when a claim accrues, and "[u]nder federal law, a claim accrues when the plaintiff knows or should know of the injury that is the basis of the cause of action." <u>Douglas v. Noelle</u>, 567 F.3d 1103, 1109 (9th Cir. 2009) (citation omitted); <u>Maldonado v. Harris</u>, 370 F.3d 945, 955 (9th Cir. 2004); <u>Fink v. Shedler</u>, 192 F.3d 911, 914 (9th Cir. 1999). Because section 1983 contains no specific statute of limitations, federal courts should apply the forum state's statute of limitations for personal injury actions. <u>Jones v. Blanas</u>, 393 F.3d 918, 927 (9th Cir. 2004); <u>Maldonado</u>, 370 F.3d at 954; <u>Fink</u>, 192 F.3d at 914. California's statute of limitations for personal injury actions was extended to two years effective January 1, 2003. Cal. Civ. Proc. Code § 335.1; <u>Jones</u>, 393 F.3d at 927; <u>Maldonado</u>, 370 F.3d at 954-55.

In actions where the federal court borrows the state statute of limitations, courts should also borrow all applicable provisions for tolling the limitations period found in state law. <u>Jones</u>, 393 F.3d at 927. Under California law, prisoners who at the time the cause of action accrued were either imprisoned on a criminal charge or serving a sentence of less than life for a criminal conviction benefit from a two-year tolling provision for damages actions. Cal. Civ. Proc. Code § 352.1; see also <u>Martinez v. Gomez</u>, 137 F.3d 1124, 1126 (9th Cir. 1998) (per curium).

In addition, California's equitable tolling doctrine "applies when an injured person has several legal remedies and, reasonably and in good faith, pursues one." <u>McDonald v. Antelope Valley Community College Dist.</u>, 45 Cal.4th 88, 100 (Cal. 2008) (citation and internal quotation marks omitted). The equitable tolling of statutes of limitations is a judicially created, nonstatutory doctrine designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations - timely notice to the defendant of the plaintiff's claims - has been satisfied, <u>McDonald</u>, 45 Cal.4th at 99 (quotation marks and citations omitted), and pursuit of administrative remedies equitably tolls the statute of limitations so long as there was timely notice,

lack of prejudice to the defendant, and reasonable, good faith conduct on the part of the plaintiff, id. at 101-103.

The Ninth Circuit has held that prisoners are entitled to equitable tolling of the statute of limitations while completing the mandatory exhaustion process. Brown v. Valoff, 422 F.3d 926, 942-943 (9th Cir. 2005). The equitable tolling of statutes of limitations is a judicially created, nonstatutory doctrine designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations-timely notice to the defendant of the plaintiff's claims-has been satisfied, McDonald, 45 Cal.4th at 99 (quotation marks and citations omitted), and pursuit of administrative remedies equitably tolls the statute of limitations so long as there was timely notice, lack of prejudice to the defendant, and reasonable, good faith conduct on the part of the plaintiff. Id. at 101-03.

If running of the statute of limitations is apparent on the face of a complaint, a claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6). Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 969 (9th Cir. 2010). In deciding a motion to dismiss, the court is ordinarily limited to the face of the complaint. Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002). "Because the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it is not generally amenable to resolution on a Rule 12(b)(6) motion." Supermail Cargo, Inc. v. U.S., 68 F.3d 1204, 1206 (9th Cir. 1995) (internal citations and quotation marks omitted); see also Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1140 (9th Cir. 2001) (stating that, "only in the rare case" could the analysis of California's equitable tolling doctrine proceed at the pleading stage). "A motion to dismiss based on the running of the statute of limitations period may be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206 (9th Cir. 1995) (internal citations and quotation marks omitted).

Here, Plaintiff was sentenced to a term of 52 years to life. (RJN, Ex. C.) Therefore, under section 352.1 and Martinez, statutory tolling applies and the effective statute of limitations for Plaintiff's civil rights claims in a California federal court action is four years.

In this case, Plaintiff alleges that Defendant Grannis, responding on behalf of Defendant Cate, denied his inmate grievance seeking religious accommodations.  (Compl at 13, 18, ECF No. 24.)  Defendant argues that "[i]t is clear from his allegations that [Plaintiff's] claims against Defendant accrued on the day that she denied his requested accommodations, or January 11, 2010."  (Id. at 18, 72.)

In his opposition, Plaintiff argues that his claims against Defendant is timely because he is entitled to tolling during the exhaustion of the administrative remedies and he commenced this action on January 10, 2014, by handing his complaint to prison staff for mailing, which was within four years of the date his actions accrued against them.  (Opp'n at pp. 11-12, ECF No. 48.)

In reply, Defendants argue that Plaintiff fails to provide proof that he delivered his original complaint to prison authorities on January 10, 2014.  "He neither produces a declaration attesting to these facts, nor includes a copy of the mailing envelope containing his complaint or any other document allegedly signed by prison staff on January 10, 2014."  (Reply, at 6:14-16, ECF No. 51.)  Defendants do not dispute that Plaintiff is entitled to tolling during exhaustion of the administrative remedies, which was complete on January 11, 2014-by denial at third and final level of review.

Under the mailbox rule, the date that Plaintiff submitted the complaint in this action to prison authorities for mailing is the constructive filing date for timeliness purposes.  Houston v. Lack, 487 U.S. 266, 275-76 (2988); Douglas v. Noelle, 567 F.3d 1103, 1109 (9th Cir. 2009).  In this instance, there is no proof of service attached to Plaintiff's original complaint which was filed stamped with the Court on January 16, 2015.  (ECF No. 1.)  However, Plaintiff's complaint is self-dated as December 31, 2013, and by way of opposition Plaintiff attests under penalty of perjury that he handed his original complaint to prison officials for mailing on January 10, 2014-one day prior to expiration of the statute of limitations on January 11, 2014.  The Court finds that Plaintiff's statement in his verified opposition is sufficient to presume that he handed his complaint to prison officials for mailing on January 10, 2014, and Defendant fails to rebut this presumption.  See, e.g., Payan v. Aramark Management Services Ltd. Partnership, 495 F.3d 1119, 1122 (9th Cir. 2007) (because the statute of limitations is an affirmative defense, the defendant bears the burden of proving that the plaintiff filed beyond the limitations period); see also Supermail Cargo, Inc., 68 F.3d at 1206 ("A motion to dismiss

17

based on the running of the statute of limitations period may be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.")  Accordingly, Defendant's motion to dismiss certain claims as time-barred should be denied.

### III.

### RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.      Defendants' motion to dismiss be granted in part and denied in part as follows:

a.      Denied as to dismissal of Plaintiff's claims for declaratory and injunctive relief based on policy of CDCR;

b.      Granted as to dismissal of all claims for monetary damages against Defendant in his official capacities;

c.      Granted as to dismissal of monetary damages against Defendant Grannis under RLUIPA; and

d.      Denied for dismissal as barred by the statute of limitations.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __February 14, 2017__

UNITED STATES MAGISTRATE JUDGE